We call the next case please. 3-14-0037, people of the state of Illinois have their letters of honor v. Cheyenne Chapai, appealed by Joel Wessel. Mr. Wessel? May it please the court, counsel. My name is Joel Wessel. I'm with the Office of the State Appellate Defender, and I represent Cheyenne Chapai. This case concerns the second time that Cheyenne has been transferred to adult court. This court reversed Cheyenne's first transfer due to insufficient evidence presented at that transfer hearing. But even with this court's directives in the first appeal and this court's published opinion in People v. Moore, Cheyenne's second transfer was again improper. Today I want to talk about the lack of evidence at the hearing on the Department of Juvenile Justice, the lack of evidence on the Department of Corrections, the lack of evidence, the complete lack of evidence regarding Cheyenne's two-year stay at Kiwanis Juvenile Facility and the juvenile judge's outside investigations when considering statutory transfer factors. But before I get into the problems with Cheyenne's newest hearing, I want to briefly address Cheyenne and the circumstances surrounding the robbery. Cheyenne's father left the family when Cheyenne was just a toddler, leaving Cheyenne's mother to care for Cheyenne and his half-brother in a Peoria public housing project. At the age of 6, Cheyenne was diagnosed with ADHD. At the age of 10, he spent 10 days in a children's psychiatric ward due to a suicide threat. He later engaged in self-harming behavior, such as constantly cutting his arms and tying an Ace bandage around his neck. These behaviors led to several psychological diagnoses, including psychological affective disorder, schizoaffective disorder, and major depressive disorder. At the time of the robbery, Cheyenne was taking five medically prescribed drugs each day to help control the various illnesses. And at the time of the robbery, 13-year-old Cheyenne was described as a follower. So when an older juvenile encouraged Cheyenne to commit this robbery and gave him an unloaded gun, Cheyenne agreed. But the next day, the stolen money was returned. Cheyenne admitted to his involvement and cooperated with the police investigation. In criminal court, in allocution, Cheyenne said this. I would like to apologize to my family and friends. I'm sorry I put you all through this. You need to stop that crying, Mom. It will be okay. Keep your head up and stay strong. I love you all. Thank you for supporting me. My prayers go out to the victim. Like I said, I'm sorry. We all make mistakes. I learned my lesson, Your Honor. Judge Kevin Lyons, who was the judge at Cheyenne's sentencing, understood the significance of this mitigating evidence. In fact, he wished that he could depart from the mandatory minimum sentence. And he declared that this case had no winners. Now getting back to the second transfer hearing, one of the factors that the juvenile judge was required to consider were the advantages in the juvenile justice system, whether there were treatment options, facilities, or programming available. In this court's published decision in People v. Moore, this court interpreted that to require evidence on the Department of Juvenile Justice, as well as any comparable services in the adult Department of Corrections, so the judge could actually consider what advantages were in the Department of Juvenile Justice. Here, the only evidence on the Department of Juvenile Justice was from probation officer Mark Brock, who testified that he was not familiar with the services offered in the Department of Juvenile Justice, but he believed that there were quite a few services that were similar in nature to the services offered in the probation programs in Peoria. But this statement offered nothing of substance to assist the judge in making its decision. Whose duty is it to put on the evidence for the judge to consider? Well, Your Honor, it's the state's motion, so it follows that it's the state's burden. And in People v. Moore, this court held that it was the state's failure to present this specific factor, evidence on this factor, the advantages. But even if this were also the defense counsel's fault, it still amounts to plain error. Cheyenne was transferred without sufficient evidence regarding this factor, because there was no mention by Mark Brock, the probation officer, of any of the facilities, any of the programming, any of the treatment options that were available in the Department of Juvenile Justice, and there was no mention at all of any comparable services in the Department of Corrections. This means that the judge was unable to really consider what advantages there were. And it was impossible to make this determination without this evidence. And according to People v. Moore, this was error. Now, this leads me directly into the next error at this transfer hearing. Another factor is that the judge is supposed to consider the minor's history of services and his willingness to participate meaningfully in those services. Now, the only evidence at this transfer hearing on this factor was Cheyenne's 2007 misdemeanor adjudication, his sentence of probation, and his two probation violations. Critically, there is absolutely no evidence on the later two years that Cheyenne spent at Kiwani's juvenile facility. The only reason this information is known is because of an addendum attached to the adult pre-sentence investigation report. And from that report, we know that Cheyenne, when he was at Kiwani, took high school education classes. And he was on his way to graduating from high school, except that he had to come back to Peoria for the second transfer hearing. And we also know from that addendum that he was receiving services for mental health, and in fact, the report noted that those services were ceased in 2011. So a reasonable assumption can be made that he successfully completed those services. But we don't actually know what happened at Kiwani. We don't know the programs, the treatment, the facilities that were offered, because this was not offered into evidence. And we also, without this evidence, it was impossible for the judge to make a determination as to Cheyenne's willingness to participate meaningfully in those services. This was the most recent and the best evidence of that factor, and it just was not here. And had this evidence been presented, it also would have directly tied into the factor I talked about initially, the advantages of treatment in the juvenile justice system. And this factor would have also, excuse me, Cheyenne's history at Kiwani would have also factored directly into other juvenile transfer factors. One of which is the ability for the juvenile justice system to rehabilitate Cheyenne and the adequacy of services offered in those facilities. But we have an entire two-year period that was not presented at all, which affected several different transfer factors. So the judge, there was not sufficient evidence presented on any of those. Now, besides the facts, there was insufficient evidence regarding these two factors. There was also the judge's outside and independent investigation when considering a statutory transfer factor. He found a report about the Department of Juvenile Justice when he was considering whether there was a reasonable likelihood that Cheyenne could be rehabilitated. Relying on this report, he found that Cheyenne could not, because according to this report, the Department of Juvenile Justice was broken. It did not rehabilitate minors. And once minors were out, they were likely to end up in the Adult Department of Corrections. But this violated Cheyenne's due process rights because this report was not entered into evidence by either party. It was thus untested by cross-examination and not subject to any rules of evidence. We don't know if this report was reliable. Now, besides this improper consideration, when the judge was considering the advantages of treatment in the juvenile justice system, a factor I alluded to before, the judge also considered his independent investigation regarding the costs that Peoria County would incur had the juvenile justice system had Cheyenne been sentenced to juvenile probation. But again, this evidence was outside the record, untested by cross-examination, and not subject to any rules of evidence. Again, violating Cheyenne's due process rights. Does the statute allow for a comparison of the cost to incarcerate an adult? The statute does not specifically list that as a factor, no. And, Your Honors, a juvenile transfer hearing is unlike any procedural procedure in adult court. When a child is transferred and convicted of a felony in criminal court, that felony conviction is inescapable. It will affect their future earnings, their employment outlook, government assistance, student loan help. In some states, you lose the right to vote. You lose the ability to serve in a jury, not to mention the serious prison time that accompanies many of these convictions. But the law treats children differently. Because children are known to be impetuous, immature, prone to heedless risk-taking, not appreciating the consequences of their actions. And that's why the juvenile transfer statute is so thorough and so detailed. Because unless there is sufficient evidence presented on each and every one of these factors, and unless the judge makes proper considerations based on evidence that it is admitted, a child cannot be made to face the same consequences as an adult. And that is why these procedures are in place. If there are no further questions, I would ask that Cheyenne's nose transfer be reversed, and that this case be remanded for sentencing in juvenile court. Thank you. Thank you, Mr. Wessel. Mr. Leonard? May it please the court, counsel. This court remanded the minors' first transfer hearing back to the trial court because of two factors. One, there is no history of treatment in the juvenile justice system. And another one, because the trial judge had found that the unloaded gun was a dangerous weapon. Really, the only person an unloaded gun is dangerous to is the person holding it, because it's going to get them shot. Yes, that's my next argument. Even though it may have been an unloaded gun, we don't know for sure if it was unloaded. You always hear of the case, somebody has a gun that accidentally fires, and if somebody kills them and injures them, the next thing out of the person holding the gun's mouth is, I didn't know it was loaded. So we have to assume that even though the defendant said it wasn't loaded, it could have been loaded. That brings me to your question here. The defendant here had the gun. He had it pointed at the store clerk, gas station attendant, because if it was unloaded, he was in danger and his friends were in danger, because the clerk or someone else in the restaurant could have been a loaded gun and shot the person, or what would have happened if a police officer would have came into the gas station. That could have ended up in a deadly situation. So this is a very serious crime, and the trial judge did not take the crime lightly. This is an armed robbery with a firearm. The defendant's first adjudication was retail theft. That's a big jump from dangerousness of the classification of a robbery from retail theft to armed robbery with a firearm. This is a dangerous person. Even though the defendant may have psychological problems, he was taking medication to treat these psychological problems. With respect to this court's order back to the trial judge to consider information about treatments in the juvenile justice system, Mark Bronte, the probation officer, testified about the services if he received probation, and he had a typed out list that he admitted into evidence of those services. He believed that most of those services were available in the Department of Juvenile Justice. There was no mention of the time that the defendant spent in the Kauai Detention Center, but the statute does not say that the trial judge has to have all the evidence, just that the trial judge needs sufficient evidence, and I believe he had sufficient evidence through Mark Bronte's testimony regarding these services and this compliance with this court's order to the trial judge. The trial judge was very particular when the case came back to him that he wanted argument from both sides and evidence regarding each factor in the transfer statute, and the trial judge did consider every evidence that the people presented on each factor. We believe that the trial judge complied with the statute on each regard for this transfer of the defendant's juvenile case to the adult court. Mr. Leonard, I have a question based on the record. When this minor was on juvenile probation, was he ordered to be placed in a residential facility? No, he was first placed on probation for retail theft. He remained at home, correct, with his mother? He stayed at home with his mother, yes. And it's his mother that brought him to the police station? Yes. In terms of this armed robbery, when he refused to speak or cooperate, his mother, who he was residing with on juvenile probation, had the minor admit or confess, said, you've got to talk? Yes, the minor's mother was very involved in the case after she found out what her son had done. She tried to gather up the money which the juveniles had taken from the gas station. She brought her son down to the... So did the court consider those factors during the transfer hearing, that while on probation he had a pretty good probation officer in the form of his mother? I'm sure the trial judge did. There's nothing in the record that he commented on that. He commented on the cost of residential placement, that this minor had never cost the county a penny for placement. Is that correct? Well, he didn't put it in that term. He stated that I see these bills come across my desk all the time. The cost associated with residential placement is expensive. That's what the trial judge stated. Do you think it's an abusive discretion for the trial judge to do a cost analysis when evaluating whether a minor is worth the investment by the county, or whether the minor is not worth the investment and should be supported by state funds? Well, we don't know if the trial judge did that analysis. Well, his statement is pretty clear. This costs the county some money if he's on probation and we have to bear the cost of housing. He said that and that could be an inference, but we have to give the trial judge the benefit of the doubt because he's presumed to know the law. Speaking of benefit of the doubt, then how do we treat Judge Lyons' statement at the end when he was imposing sentence to say, you know, if I had to do it all over again, I probably wouldn't have transferred him. So how much deference do we get to that kind of a statement? Well, what he was concerned with at that point is because he had to sentence the juvenile to 21 years in prison because that was the minimum sentence because of the 15 years. Shouldn't have been a surprise to Judge Lyons. He knew that when he transferred the minor. So his remarks seem to be an invitation for this court to reverse it. Do you interpret them that way? I don't interpret them that way. I believe that Judge Lyons felt sorry for this juvenile because this was his only second offense. Even though it was a serious one, he would have liked to give them a lesser prison sentence, but unfortunately because he was transferred to adult court and unfortunately because of the unamended 15 year ad hoc, he was required to give them a 21 year prison sentence, and I think that's what the trial judge's remorse was. Thank you for responding to my question. Yes, which leads me to the second issue. This issue regarding the 15 year ad hoc is currently pending before the Supreme Court in the case of the Obers Reyes. I had asked this court to hold the case in abeyance until that is decided because that will directly affect this case. If the Supreme Court upholds that case, then the defendant's sentence will remain the same and if the Supreme Court finds that that's unconstitutional or improper, the defendant's sentence in this case may change and be lesser and that may be what Judge Lyons intended. Do you know where Reyes is in the process? Has it been fully briefed? Has it been scheduled for oral argument? Has argument occurred in the Supreme Court? I'm not exactly sure, but I think everything has been completed for oral argument and we're just waiting for a decision now. Oh, it has been argued? I think it has been argued and I think we're just waiting for a decision now. Reyes won't affect the transfer issue? No, it will not affect that. I checked Tuesday and as of Tuesday there was no ruling on Reyes. Isn't Reyes a lot different than this case? Reyes, if I remember correctly, had 97 years because first off it was a mandatory transfer in Reyes. Not a question of the judge deciding it. And then there was mandatory consecutive sentencing in Reyes, which doesn't exist in this case. We don't have the 97 years, we don't have that kind of Reyes situation. No, but we do have the issue of whether the 15 year add-on is violates the proportionate penalties clause with respect to juveniles. I wonder, would that really be decided in Reyes? I believe that it was going to be decided in Reyes. You're right, they have the mandatory aspects in Reyes. Yes, that was part of it. Yes, I believe that was one of the issues raised. Yes, I believe that was one of the issues that was raised. That's why I'm asking this court to hold the case in advance until the Supreme Court decides that 15 year add-on has violated the proportionate penalties clause. How was those two minutes? Just in summary, Judge Lyons was very particular. He wanted information on each one, even though the trial judge may have made some mistakes regarding the report of the juvenile justice system's broken character or the cost of placement in a residential home. Those two issues were forfeited, I argue, in my brief. Even if they were not forfeited, I believe they were harmless error. The trial judge probably should not have been speaking up the type of mistake, but it's presumed that the trial judge considered proper factors when he made that determination. I'm going to ask that this court affirm the transfer of the defendant's case from juvenile court to adult court and affirm the defendant's sentence. Yes, thank you, Your Honor. There is no doubt that Shane's crime was serious, but according to this court's published decision in Pupil v. Moore, the factors require evidence on the Department of Juvenile Justice as compared to the Department of Corrections, the specific treatment, the specific facilities and programs, and that just was not presented here. Mr. Brock did not testify to any of these programs and stated that he was actually not familiar, but he assumed that the foundations were similar. And regarding the minor's history of services, evidence cannot be sufficient without the last two years of the time he spent at Keewanee. The judge did not have sufficient evidence to consider that factor. That is perhaps the best evidence that the judge could have considered when determining whether or not that factor was important in Shane's transfer. And regarding the outside considerations in my brief, I did argue that this was plain error. I argued that this was certainly not harmless. The judge spent considerable time and thought talking about this Department of Juvenile Justice report as well as considering the finances that Peoria County would incur had Shane had to stay on juvenile probation. Again, the transfer procedures are so detailed because a child cannot be transferred without these proper considerations and without evidence as to each and every transfer factor. Regarding argument two, Reyes was a 97-year term with 45 years of firearm enhancements. The minor was challenging whether the Eighth Amendment's prohibition against natural life sentences also worked in this case where he pretty much received de facto life, a 97-year sentence. That decision does not affect this Court's consideration here. And as Your Honor alluded to, if this Court finds that Shane was improperly transferred, it has no need to hold the case. Are there any further questions? Thank you, Your Honor. Thank you both for your arguments here this morning. This matter will be taken under advisement and written dispositions will be issued. So right now we'll be in a brief recess for a panel discussion for the next day.